**Affirmed and Opinion Filed July 16, 2018**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-16-01318-CR

**JAMES DALTON SMITH, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 401st Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 401-82195-2015**

## MEMORANDUM OPINION

Before Justices Bridges, Myers, and Schenck
Opinion by Justice Bridges

James Dalton Smith appeals his conviction of one count of continuous sexual abuse of a child younger than fourteen and two counts of indecency with a child by sexual contact. A jury found appellant guilty and sentenced him to thirty years' confinement on the continuous sexual abuse count and four years' confinement on each indecency count. In eight issues, appellant argues the continuous sexual abuse statute is unconstitutional on its face and as applied, the indictment was fundamentally defective, the jury charge was fundamentally defective, the evidence is insufficient to show appellant committed two or more of the alleged acts of sexual abuse after the effective date of the continuous sexual abuse statute and before the complainant reached fourteen years of age, there is a fatal variance between the indictment and the court's charge, appellant's sentence and the no parole provision violate state and federal constitutional protections against

cruel and unusual punishment, the trial court erred in admitting evidence of extraneous bad acts, and the trial court erred in overruling appellant's objection to Eli Molina being the outcry witness. We affirm the trial court's judgment.

At a hearing outside the presence of the jury at appellant's trial in October 2016, the trial court conducted a hearing to determine the proper outcry witness. Laura Dueer, the thirty-one-year-old sister of the complainant, C.N.S., testified she had asked C.N.S. if appellant "had done anything inappropriately with her sexually" when C.N.S. was twelve or thirteen. C.N.S.'s "answer was no." However, on January 21, 2015, C.N.S. called Dueer and said she had "lied to [Dueer] back then" and told Dueer that appellant had done something inappropriate. Dueer could not "get any kind of specific details" from C.N.S., but C.N.S. said "it started right around her eighth birthday" and ended when she was twelve or thirteen. Dueer "picked [C.N.S.] up and took her to the police right away."

Eli Molina, a forensic interviewer at the Children's Advocacy Center of Collin County, testified he interviewed C.N.S. on January 21, 2015. In the interview, C.N.S. described detailed sexual acts that occurred with her and appellant on more than one occasion "from the time that she was nine until twelve or thirteen." C.N.S. described in detail what she felt during the assaults and described sensory details about multiple assaults. Molina testified C.N.S. said she had told her sister that she "was molested" and told "someone on the Internet" that "she had been dating," but Molina testified he was the first person eighteen years of age or older that C.N.S. had "told specific details about what touched what." Appellant objected to Molina being the outcry witness, but the trial court overruled the objection.

C.N.S., seventeen at the time of trial, testified her father, appellant, began sexually abusing her in 2008 when she was nine years old. After the first time, appellant abused her "multiple times a week." About a year after the abuse started, appellant began having sex with C.N.S. When

–2–

C.N.S. was in "seventh grade and after," she was sometimes "kind of out of it" when appellant assaulted her because appellant gave her "pills" and "liquor and beer and marijuana." C.N.S. testified appellant sometimes showed her pornography, left a sex toy in her bed after assaulting her one time, and left a picture of his penis on C.N.S.'s cell phone. The abuse ended in 2012, when C.N.S. was twelve or thirteen.

E.M., seventeen years old at the time of trial, testified she was C.N.S.'s "best friend from about sixth to tenth grade." E.M. testified she frequently spent the night at C.N.S.'s house. The second time E.M. spent the night, she woke up and found appellant "standing at the foot of the bed watching while [she] was asleep." Appellant had "something up to his face," and E.M. thought "it was night vision goggles or something like that." E.M. recognized appellant, who was wearing his work uniform. E.M. testified she thought that she might be imagining it, but she moved around and confirmed "it was definitely not [her] imagination." E.M. pulled the blanket over herself and waited while she continued to watch. Appellant "just stood there for a while and then eventually backed out of the room and didn't turn back around until he was out the door." E.M. testified the incident did not happen again.

Lanita Smith testified she is married to appellant's brother. On one occasion in 2014, after calling appellant to let him know she was coming over, Smith went to appellant's house and knocked on the door. Appellant "took a little while" to come to the door and, when he opened the door, appellant was wearing boxers, he had a camera around his neck, and "it looked like he had [an erection]." Smith saw C.N.S. inside on a couch. C.N.S. had her panties "down around her knees," and she was wearing a t-shirt. C.N.S. pulled up her panties and "sat up off the couch." Smith went inside and asked C.N.S. if she was okay. C.N.S. said she was "fine" and "turned around and walked off." Smith "thought it was kind of strange" and suspected "something was happening," but she did not say anything until after C.N.S. reported the abuse. At the conclusion

–3–

of trial, the jury found appellant guilty of continuous sexual abuse of a child younger than fourteen and two counts of indecency with a child by sexual contact. This appeal followed.

In his first issue, appellant argues the continuous sexual abuse statute, penal code section 21.02, in unconstitutional on its face and as applied and resulted in fundamental error as applied in this case. However, appellant did not raise the issue of the constitutionality of section 21.02 in the trial court. A defendant may not raise for the first time on appeal a facial challenge to the constitutionality of a statute. *Karenev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009). Further, appellant must preserve an "as applied" constitutional challenge by raising it at trial. *Flores v. State*, 245 S.W.3d 432, 437 n.14 (Tex. Crim. App. 2008). Thus, we conclude appellant has waived his right to challenge the constitutionality of section 21.02. We overrule appellant's first issue.

In his second issue, appellant argues the indictment in this case is fundamentally defective and resulted in egregious error. Specifically, appellant complains the indictment for continuous sexual assault of a child was ambiguous because it used "and/or" language to allege four separate predicate offenses. Again, appellant did not object to the indictment in the trial court, and he thereby forfeited any right to object to indictment defects. *Teal v. State*, 230 S.W.3d 172, 182 (Tex. Crim. App. 2007). We overrule appellant's second issue.

In his third issue, appellant argues the jury charge is fundamentally erroneous and resulted in egregious harm because it abrogated appellant's right to a unanimous verdict and failed to require the jury to elect a specific act of abuse, allowed the jury to convict based on the commission of acts less than alleged in the indictment and allowed the jury to consider acts occurring before the effective date of the continuous sexual abuse statute and after C.N.S. turned fourteen.

Appellate review of purported error in a jury charge involves a two-step process. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). First, we determine whether the jury

instruction is erroneous.  *Id.*  Second, if error occurred, then an appellate court must analyze that error for harm.  *Id.*  If, as here, the error was not objected to, it must be "fundamental" and requires reversal occurs only if it was so egregious and created such harm that the defendant "has not had a fair and impartial trial."  *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009).

Appellant was charged with continuous sexual abuse of a child pursuant to section 21.02 of the Texas Penal Code.  Section 21.02 provides, in pertinent part:

(b) A person commits an offense if:

(1) during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims; and

(2) at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is a child younger than 14 years of age.

....

(d) If a jury is the trier of fact, members of the jury are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed.  The jury must agree unanimously that the defendant, during a period that is 30 or more days in duration, committed two or more acts of sexual abuse.

TEX. PENAL CODE ANN. § 21.02 (emphasis added).

Count One of the indictment in this case charged appellant with the following:

### Count 1

during a period that was 30 days or more in duration, committed two or more acts of sexual abuse against [C.N.S.], said acts of sexual abuse having been violations of one or more of the following penal laws, including:

Aggravated Sexual Assault of a Child: intentionally and knowingly cause the female sexual organ of [C.N.S.], a child then younger than fourteen (14) years of age, and not the spouse of the defendant, to contact the male sexual organ of the defendant;

### AND/OR

Aggravated Sexual Assault of a Child: intentionally and knowingly cause the female sexual organ of [C.N.S.], a child then younger than fourteen (14) years of age, and not the spouse of the defendant, to contact the mouth of the defendant;

Aggravated Sexual Assault of a Child: intentionally and knowingly cause the penetration of the female sexual organ of [C.N.S.], a child then younger than fourteen (14) years of age, and not the spouse of the defendant, by means of the defendant's finger;

AND/OR

Indecency With a Child by Contact: intentionally and knowingly, with the intent to arouse or gratify the sexual desire of any person, engage in sexual contact by touching part of the genitals of [C.N.S.], a child younger than seventeen (17) years of age and not the spouse of the defendant, by means of part of the defendant's hand;

and each of the aforementioned acts of sexual abuse were committed on more than one occasion and, at the time of the commission of each of the acts of sexual abuse, the defendant was seventeen (17) years of age or older and [C.N.S.] was a child younger than fourteen (14) years of age;

Regarding appellant's unanimity argument, the trial court's jury charge followed the

language of section 21.02(d):

In order to find the defendant guilty of the offense of Continuous Sexual Abuse of a Young Child, you are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed. However, in order to find the defendant guilty of the offense of Continuous Sexual Abuse of a Young Child, you must agree unanimously that the defendant, during a period that is 30 or more days in duration, committed two or more acts of sexual abuse.

Section 21.02 is a statute that creates a single element of a "series" of sexual abuse; it does not

make each "violation" (act of sexual abuse) a separate element of the offense that needs to be

agreed upon unanimously. *Render v. State*, 316 S.W.3d 846, 858 (Tex. App.—Dallas 2010, pet.

ref'd). Thus, the jury charge did not permit a non-unanimous verdict. *See id.*

Regarding appellant's argument that the charge allowed the jury to consider acts occurring

before the effective date of the continuous sexual abuse statute and after C.N.S. turned fourteen,

appellant is correct that the offense of continuous sexual abuse of a young child became effective

on September 1, 2007, and the statute does not apply to acts of sexual abuse committed before that

date. *Gomez v. State*, 459 S.W.3d 651, 660 (Tex. App.—Tyler 2015, pet. ref'd). Appellant complains of the following portion of the court's charge:

> You are instructed that while the indictment alleges that the offenses were committed on or about the 12th day of August, 2008 through the 1st day of August, 2013, and on or about the 15th day of March, 2010, respectively, you are not bound to find that the offenses, if any, took place on those specific dates, it being sufficient if such time is approximately accurate, and occurring prior to August 15, 2015, the date of the return of the indictment for said offenses in this case, and is not barred by the statute of limitations.

Appellant argues that this portion of the charge permitted the jury to consider acts occurring at any time prior to August 15, 2015 and thereby permitted the jury to consider acts occurring before the effective date of the continuous sexual assault statute and after C.N.S.'s fourteenth birthday.

In examining the record to determine whether jury-charge error is egregious, the reviewing court should consider the entirety of the jury charge itself, the evidence, including the contested issues and weight of the probative evidence, the arguments of counsel, and any other relevant information revealed by the record of the trial as a whole. *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007). Here, C.N.S. testified appellant began sexually abusing her in 2008 when she was nine years old, and the abuse ended in 2012, when C.N.S. was twelve or thirteen. There was no evidence presented that any abuse occurred before the continuous sexual assault statute became effective on September 1, 2007 or after C.N.S. turned "twelve or thirteen" in 2012. The application paragraph under count one was predicated on a finding that appellant committed the acts of sexual abuse "on or about the 12th day of August, 2008, through the 1st day of August, 2013." The application paragraph further required the jury to find that, "at the time of the commission of each of the acts of sexual abuse, the defendant was seventeen (17) years of age or older and [C.N.S.] was a child younger than fourteen (14) years of age." The testimony showed C.N.S. turned fourteen on August 11, 2013. Considering the record and the charge as a whole, we

cannot conclude appellant was egregiously harmed by the charge's reference to offenses "occurring prior to August 15, 2015." *Id.*

Regarding appellant's argument that the charge allowed the jury to convict based on the commission of acts less than alleged in the indictment, appellant complains the charge did not track the indictment's averment that "each of the aforementioned acts of sexual abuse were committed on more than one occasion." Appellant argues that, having pleaded this allegation in the indictment, the State was bound by the indictment and was required to prove the allegation but failed to do so because the charge was silent in this respect. Instead, the charge required the jury to find that "any one or more of the aforementioned acts of sexual abuse were committed on more than one occasion." As a result, appellant argues, the charge is fundamentally defective because it allowed the jury to convict appellant based on commission of acts less than alleged in the indictment. In his fourth issue, appellant argues, based on this same argument, that the evidence was insufficient to show he committed more than one of the alleged predicate offenses more than thirty days apart or to show he committed each of the alleged predicate offenses more than once as pleaded in the indictment. In his fifth issue, appellant argues there is a fatal variance between the indictment's allegation that "each of the aforementioned acts of sexual abuse were committed on more than one occasion" and the court's charge that only required the jury to find that "any one or more of the aforementioned acts of sexual abuse were committed on more than one occasion."

In an evidentiary-sufficiency review, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Ramjattansingh v. State*, No. PD-0972-17, 2018 WL 2714677, at *3 (Tex. Crim. App. June 6, 2018). A reviewing court's limited determination on sufficiency review does not rest on how the jury was instructed. *Ramjattansingh*, 2018 WL 2714677, at *3. In assessing a challenge to the

sufficiency of the evidence in a criminal case, the elements of the charged crime are the elements "defined by the hypothetically correct jury charge for the case," a charge that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* (quoting Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "As authorized by the indictment" means the statutory elements of the offense as modified by the charging instrument. *Id.* When a Texas statute lists more than one method of committing an offense or definition of an element of an offense, and the indictment alleges some, but not all, of the statutorily listed methods or definitions, the State is limited to the methods and definitions alleged. *Id.* But the hypothetically correct jury charge does not necessarily have to track exactly all of the charging instrument's allegations. *Id.* Under *Gollihar v. State*, 46 S.W.3d 243, 257 (Tex. Crim. App. 2001), whether an unproved allegation is to be included in the hypothetically correct jury instruction is determined by whether or not the variance between the allegation and proof is "material." *Id.* Only a "material" variance, one that prejudices a defendant's substantial rights, will render the evidence insufficient. This happens when the indictment, as written, 1) fails to adequately inform the defendant of the charge against him, or 2) subjects the defendant to the risk of being prosecuted later for the same crime. *Id.*

> The Texas Court of Criminal Appeals has recognized three different categories of variance:
>
> 1. a statutory allegation that defines the offense; not subject to materiality analysis, or, if it is, is always material; the hypothetically correct jury charge will always include the statutory allegations in the indictment;
>
> 2. a non-statutory allegation that is descriptive of an element of the offense that defines or helps define the allowable unit of prosecution; sometimes material; the hypothetically correct jury charge will sometimes include the non-statutory allegations in the indictment and sometimes not;
>
> 3. a non-statutory allegation that has nothing to do with the allowable unit of prosecution; never material; the hypothetically correct jury charge will never include the non-statutory allegations in the indictment.

*Id.* at \*3-4.  The bottom line is that, in a sufficiency review, we tolerate variances as long as they are not so great that the proof at trial "shows an entirely different offense" than what was alleged in the charging instrument.  *Id.* at \*4.

In *Ramjattansingh*, the appellant was charged by information with driving while intoxicated.  *Id.*  As the court noted, if the State proves a defendant had "an alcohol concentration level of 0.15 or more at the time the analysis was performed," the offense is a Class A misdemeanor.  *Id.*  However, the information alleged appellant had "an alcohol concentration level of 0.15 or more at or near the time of the commission of the offense."  *Id.* at \*5.  The court held this language in the information fit the test for an immaterial variance.  *Id.*  This extra language was a "non-statutory allegation that had nothing to do with the allowable unit of prosecution."  *Id.*  It was an "extra, made-up requirement."  *Id.*  Appellant argued that the language created a material variance because it misled the defense and led appellant to believe "he would have to defend against this discrete allegation."  The court rejected this contention, noting appellant's defense was that there was no adequate, non-hearsay proof that appellant was driving at all, and appellant did not "anchor his case" to challenging the alcohol concentration at the time of the test as compared to the concentration at or near the time of driving.  *Id.* at \*6.  Because the variance between the non-statutory allegation and the proof presented at trial was immaterial, the hypothetically correct jury charge did not need to include it.  *Id.*

Similarly, here the indictment contained extra language that was a "non-statutory allegation that had nothing to do with the allowable unit of prosecution."  *See id.* at \*5.  The variance between the non-statutory allegation and the proof presented at trial was therefore immaterial.  *See id.*  In reaching this conclusion, we note appellant did not "anchor his case" to challenging the indictment's averment that "each of the aforementioned acts of sexual abuse were committed on more than one occasion."  Appellant's defense was that he did not commit any acts of sexual abuse.

Because the variance in this case was immaterial, the State was not bound by the indictment and was not required to prove the allegation that "each of the aforementioned acts of sexual abuse were committed on more than one occasion." We overrule appellant's third and fifth issues.

Regarding the sufficiency of the evidence, the hypothetically correct jury charge in this case did not need to include the "extra, made-up requirement" that "each of the aforementioned acts of sexual abuse were committed on more than one occasion." *See id.* Instead, both the trial court's charge and the hypothetically correct jury charge include language requiring proof that "any one or more of the aforementioned acts of sexual abuse were committed on more than one occasion," in keeping with the requirements of penal code section 21.02.

A conviction for sexual assault of a child is supportable on the uncorroborated testimony of the victim of a sexual offense alone. TEX. CODE CRIM. PROC. art 38.07; *Revels v. State*, 334 S.W.3d 46, 52 (Tex. App.—Dallas 2008, no pet.). Here, C.N.S. testified appellant began sexually abusing her in 2008 when she was nine years old, appellant abused her "multiple times a week and began having sex with her, and the abuse ended in 2012, when C.N.S. was twelve or thirteen. This testimony was sufficient to prove one or more of the acts of sexual abuse were committed on more than one occasion. *See Jackson*, 443 U.S. at 319; *Revels*, 334 S.W.3d at 52. We overrule appellant's fourth issue.

In his sixth issue, appellant argues his sentence and the no parole provision in his sentence violate his constitutional protection against cruel and unusual punishment. This argument has previously been considered and rejected. *See Barroquin-Tabares v. State*, No. 05-15-00794-CR, 2016 WL 3144160, at *3 (Tex. App.—Dallas May 31, 2016); *Glover v. State*, 406 S.W.3d 343, 347-50 (Tex. App.—Amarillo 2013, pet. ref'd). We overrule appellant's sixth issue.

In his seventh issue, appellant argues the trial court erred in admitting evidence of extraneous bad acts or conduct. Specifically, appellant complains of the admission of Smith's

testimony about appellant coming to the door in his boxers and E.M.'s testimony concerning the night vision goggles. Appellant also complains of the admission of C.N.S.'s testimony that (1) appellant gave her alcohol, marijuana, and other drugs; (2) she found a sex toy in her bed; and (3) appellant left a picture of his penis on her phone. In addition to his claim that admission of this evidence was erroneous and harmful, appellant argues the evidence did not fall within an exception to the rule against extraneous offense evidence, citing rule of evidence 404(b), and "its probative value is substantially outweighed by its danger of unfair prejudice or propensity to confuse, delay, mislead, or cumulate," citing rule of evidence 403. Appellant cites no other authorities in his argument.

We review the trial court's decision to admit or exclude evidence, as well as its decision as to whether the probative value of evidence was substantially outweighed by the danger of unfair prejudice, under an abuse of discretion standard. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). The trial court does not abuse its discretion unless its determination lies outside the zone of reasonable disagreement. *Id.*

Under the Texas Rules of Evidence, evidence of other crimes, wrongs, or acts is not admissible "to prove the character of a person in order to show action in conformity therewith." *De La Paz v. State*, 279 S.W.3d 336, 342 (Tex. Crim. App. 2009). But it may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *See* TEX. R. EVID. 404(b); *De La Paz*, 279 S.W.3d at 342-43.

Article 38.37, entitled "Evidence of extraneous offenses or acts," is an evidentiary rule applicable to certain types of sexual abuse cases including sexual assault of a child, indecency with a child, and continuous sexual abuse of a child. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37 (West Supp. 2016). It supersedes application of Rule 404(b), making admissible extraneous offense evidence that Rule 404(b) does not. *See id.* §§ 1(b), 2(b). Article 38.37 allows the jury to consider

that evidence's bearing on "relevant matters," including the state of mind of the defendant and the child, the previous and subsequent relationship between the defendant and the child, and the character of the defendant and acts performed in conformity with the character of the defendant. *See id.*

Here, appellant does not address the applicability of article 38.37. Nevertheless, we conclude the evidence appellant complains of was admissible under article 38.37. All of the evidence was relevant to show appellant's state of mind, his relationship with C.N.S. and another young girl, E.M., and appellant's character as the perpetrator of a continuous sexual abuse of a young child. *See id.* Accordingly, the trial court did not abuse its discretion in admitting the evidence. *See De La Paz*, 279 S.W.3d at 342-43. We overrule appellant's seventh issue.

In his eighth issue, appellant argues the trial court erred in overruling his objection to Molina being the outcry witness. Specifically, appellant argues C.N.S. had made prior outcry to her "step-mother, Amanda Smith," and Dueer. In addition, appellant argues the trial court erred in not making findings on the record that the statement made to Molina was reliable based on the time, content, and circumstances of the statement.

When a defendant is charged with certain offenses against a child under the age of fourteen or a disabled individual, article 38.072 allows into evidence the complainant's out-of-court statement so long as that statement is a description of the offense and is offered into evidence by the first adult the complainant told of the offense. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072 (West Supp. 2016).

Article 38.072 has additional requirements that must be met before an outcry witness may testify. *Id.* At least 14 days before the trial on the merits begins, the State must notify the defendant of its intention to call an outcry witness, who must be identified. *Id.* § 2(b)(1). The State must provide a summary of the outcry statement that will be offered into evidence. *Id.* Outside the

presence of the jury, the trial court must hold a hearing to determine, "based on the time, content, and circumstances of the statement" whether the victim's out-of-court statement is "reliable." *Id.* § 2(b)(2). Finally, the victim must either testify, or be available to testify, at the proceeding in court or in any other manner provided by law. *Id.* § 2(b)(3). To qualify as an outcry statement under article 38.072, the statement must be more than a general allusion of sexual abuse and the child must have described the alleged offense in some discernible way, that being "more than words which give a general allusion that something in the area of child abuse was going on." *Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990); *Reyes v. State*, 274 S.W.3d 724, 727 (Tex. App.—San Antonio 2008, pet. ref'd).

Here, the State filed notice of its intent to offer outcry testimony more than fourteen days before trial, and the trial court conducted a hearing to determine the outcry witness. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072 §§ 2(b)(1), (2) (West Supp. 2016). The record shows Amanda Smith did not testify at the outcry hearing. Dueer testified C.N.S. called Dueer and told Dueer that appellant had done something inappropriate. Dueer could not "get any kind of specific details" from C.N.S. On the contrary, Molina testified C.N.S. described detailed sexual acts that occurred with her and appellant on more than one occasion "from the time that she was nine until twelve or thirteen." C.N.S. described in detail what she felt during the assaults and described sensory details about multiple assaults. Molina testified he was the first person eighteen years of age or older that C.N.S. had "told specific details about what touched what." Under these circumstances, we conclude the trial court did not abuse its discretion in determining Molina was the outcry witness. *See Martinez v. State*, 327 S.W.3d at 736. Further, by overruling appellant's objections to Molina's testimony, the trial court impliedly found the statement given to Molina was reliable. *See Halbrook v. State*, 322 S.W.3d 716, 722 (Tex. App.—Texarkana 2010, no pet.). We overrule appellant's eighth issue.

–14–

We affirm the trial court's judgment.

_/David L. Bridges/_
DAVID L. BRIDGES
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)

161318F.U05



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

JAMES DALTON SMITH, Appellant

No. 05-16-01318-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 401st Judicial District
Court, Collin County, Texas
Trial Court Cause No. 401-82195-2015.
Opinion delivered by Justice Bridges.
Justices Myers and Schenck participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered July 16, 2018.